DEBI HELDEBRANDT, Petitioner-Appellee, v. JAMES RICHARD HELDEBRANDT, Respondent-Appellant.

Fourth District   No. 4—93—0255

Argued September 20, 1993.—Opinion filed October 22, 1993.

Howard W. Feldman (argued), of Feldman & Wasser, of Springfield, for appellant.

Leonard B. Cohn (argued), of Springfield, for appellee.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In December 1989, Debi Heldebrandt, petitioner, and James Heldebrandt, respondent, were granted a dissolution of their marriage, and Debi was awarded custody of their five children. The trial court granted James visitation with any two of the children every Sunday afternoon. In May 1992, James filed a petition to modify his visitation rights. In June 1992, the parties agreed to follow a family counselor's recommendations regarding James' visitation rights, but each party reserved the right to ask the trial court to review the recommendations. In February 1993, the trial court, after apparently reviewing the counselor's recommendation, modified James' visitation rights by allowing limited visitation with the two youngest children, terminating visitation with the three older children, and allowing unlimited, reasonable telephone visitation with all the children.

James appeals this order, arguing that (1) the trial court denied him the opportunity to cross-examine the counselor regarding his report and recommendations on James' visitation rights, (2) the trial court applied an incorrect standard in modifying the visitation order, and (3) the evidence did not support the trial court's visitation order. Because we agree with James' first two arguments, we reverse and remand for further proceedings.

## I. BACKGROUND

Debi and James married in October 1976. During their marriage, they had five children: Michael, born in September 1977; Brandon, born in February 1979; Eric, born in November 1980; Michelle, born in July 1982; and Cody, born in June 1985. In December 1989, Debi was granted a dissolution of the marriage and

awarded custody of all the children. The trial court granted James visitation "every Sunday from noon to 5:00 p.m., with two of the minor children during every visitation period."

In May 1992, James filed a petition for rule to show cause and a petition to modify visitation with his children. In his petition for rule to show cause, James alleged that Debi had wilfully denied him visitation. In his petition to modify visitation, James requested expanded visitation to include all the children and to occur from Friday evening to Sunday evening, every other weekend, as well as extended periods of time during summer and holiday school breaks.

Debi's responses denied that she wilfully interfered with James' visitation. Instead, she alleged that on six consecutive weekends in April and May 1992, each of the children refused to go with James. She further alleged that the children did not want to participate in visitation with their father because he had physically abused them during the marriage and threatened to do so again during their prior visits. Debi asked the court to deny James' petition to modify visitation.

Debi also filed a cross-petition seeking to modify visitation. She sought to require James, as a prerequisite to visitation with the children, to obtain counseling for his physically abusive conduct and threats of physical abuse toward the children. She also requested that James' current wife be present during any visitation. She did not seek to alter the times when James could visit the children as set forth in the December 1989 judgment of dissolution.

The trial court held two hearings in June 1992 on this matter. At the first hearing, the court found that Debi did not wilfully deny James visitation. The court began the second hearing by conducting separate, *in camera* interviews with each of the five children. After conducting these interviews, the court learned that Debi and James had reached an agreement on visitation. They agreed that James would obtain counseling regarding his relationship with the children, and that the counseling would include the children and Debi as necessary. Further, James' visitation with the children would not begin until the counselor believed it appropriate, and the counselor would also determine the structure (duration, number of children, *et cetera*) of such visitation. The parties' attorneys would agree upon a counselor. If any disputes later arose regarding the counselor chosen or his recommendations for visitation, either party could seek the court's review. The court set an October 1992 hearing to review the matter and entered a written order essentially following their agreement.

In September 1992, James filed a motion to modify and reconsider the court's June 1992 order. In this petition, James alleged that Debi continued to deliberately interfere with his visitation rights. James further alleged that all the counselors Debi suggested were significantly inconvenient and beyond his financial means. James requested that the court order visitation to begin again in the manner set forth in the judgment of dissolution, and that the court order Debi to transport the children from Gibson City, where she resided after her marriage in June 1992, to Springfield for these visits. Debi filed a response denying James' allegations and asking the court to refuse both of his requests.

In October 1992, the trial court denied James' motion to reconsider the June 1992 order. The court did permit James to have "reasonable telephone visitations" with the children on Tuesday and Thursday evenings. The court also reset the matter for a status report by telephone conference in November 1992.

The court continued the matter to allow Dr. Joseph Strano, the counselor upon whom the parties agreed, time to complete interviews with all the necessary persons. The parties received Dr. Strano's report and recommendations in late January 1993. In February 1993, the court held a hearing regarding visitation. The record does not reflect whether the court actually received the report as well. After the hearing, the court made the following docket entry:

"Court finds as follows:

1. It is not in the best interest of the minor children of the parties that regular standard visitation be ordered at this time with [James].

2. The relationship of [James] with his children is extremely poor at this time.

3. In an effort to improve his relationship with his children, [James] should be allowed telephone communication with all children and limited supervised visitation with Michelle and Cody.

Court orders as follows:

1. [James] shall be allowed reasonable telephone communication with his children.

2. [James] shall be allowed visitation with Michelle and Cody supervised at all times by his wife o[r] his relative 'Sandy' for a perion [sic] of four hours not including traveling time as follows:

| | |
|---|---|
| Even years: | Martin Luther King Day, Easter Sunday, 4th of July, Thanksgiving Day; |
| Odd years: | President's Day, Kazimierz [sic] Pulaski Day, Memorial Day, Labor Day, and Christmas Day; |

3. [James] may be considered for increased visitation and/or in conjunction with further family counseling in areas that would assist him in successfully completing counseling in areas that would assist him in psychological and developmental issues involving managing and disciplining the children.

4. All visitation is subject to condition that there not be the use of profanity and [James] is not to administer corporal punishment."

James appeals from this order.

Also taken on appeal is Debi's motion to add Dr. Strano's report, dated January 28, 1993, to the common law record. This report was not included in the record, and Debi argues that the clerk of the circuit court inadvertently left it out of the record. James objects, arguing that this report constitutes hearsay and was never properly introduced into evidence by either party.

## II. ANALYSIS

Section 607 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/607 (West 1992)) governs a parent's visitation rights. Section 607(a) of the Act entitles a parent who was not granted custody of his child to reasonable visitation rights unless the court finds that visitation would seriously endanger the child's physical, mental, moral, or emotional health. (750 ILCS 5/607(a) (West 1992).) Section 607(c) of the Act covers modifications to a visitation order and provides as follows:

"The court may modify an order granting or denying visitation rights whenever modification would serve the best interest of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral or emotional health." (750 ILCS 5/607(c) (West 1992).)

On appeal, this court will not reverse a trial court's decision concerning modification of visitation unless it is against the manifest weight of the evidence or an abuse of discretion. *In re Marriage of Kading* (1986), 150 Ill. App. 3d 623, 631, 501 N.E.2d 971, 978; *In*

*re Marriage of Strang-Reynolds-Conour* (1991), 218 Ill. App. 3d 467, 468, 577 N.E.2d 1391, 1392.

### A. *Cross-Examination of Family Counselor*

James first argues that the trial court failed to hold an evidentiary hearing prior to entering its February 1993 visitation order. He asserts that he should be allowed to challenge Dr. Strano's report and recommendations. James alleges that the trial court conducted no substantive evidentiary hearing prior to the February 1993 docket entry and order. Additionally, James argues that Dr. Strano's report was not entered into evidence, and the trial court should therefore not have considered it. Debi responds that the trial court could base its visitation order upon Dr. Strano's report regardless of its being formally entered into evidence.

Under section 605 of the Act, a court may order an investigation and report concerning the custodial arrangements for the children. (750 ILCS 5/605 (West 1992).) Section 605 of the Act sets forth the guidelines for these investigations and reports as follows:

"(a) In contested custody proceedings, and in other custody proceedings if a parent or the child's custodian so requests, the court may order an investigation and report concerning custodial arrangements for the child. \*\*\*
   \*\*\*

(c) The investigator shall mail the report to counsel, and to any party not represented by counsel, at least 10 days prior to the hearing. The court may examine and consider the investigator's report in determining custody. The investigator shall make available to counsel, and to any party not represented by counsel, the investigator's file of underlying data, reports, and the complete texts of diagnostic reports made to the investigator pursuant to the provisions of subsection (b) of this Section, and the names and addresses of all persons whom the investigator has consulted. Any party to the proceeding may call the investigator, or any person whom he has consulted, as a court's witness, for cross-examination. A party may not waive his right of cross-examination prior to the hearing." 750 ILCS 5/605 (West 1992).

■■ Section 605(c) of the Act directly contemplates the trial court's use of such reports when the court reviews custody arrangements without the reports' having been formally entered into evidence. Based upon our review of this statute, we specifically hold that when a court receives a report pursuant to section 605 of the

Act, the court can consider the report as if the contents of that report had been given as direct testimony during a hearing. The court need not receive the report into evidence during a formal proceeding in order to consider the report when reviewing custody or visitation arrangements. Thus, section 605(c) of the Act provides that a report submitted under this section is an exception to the hearsay rule. (See *In re Marriage of Noble* (1989), 192 Ill. App. 3d 501, 511, 548 N.E.2d 518, 524.) However, section 605(c) of the Act further provides that the court must allow either party the opportunity to cross-examine the investigator who made the report, unless the party waives that opportunity at a hearing on the matter. 750 ILCS 5/605(c) (West 1992).

In this case, the parties agreed to have a family counselor interview them and their children as necessary to make recommendations for visitation between James and the children. The parties further agreed to abide by the counselor's recommendations, but reserved the right to seek the court's review. The trial court entered an order incorporating their agreement. After Dr. Strano completed his investigation and forwarded his report to the parties and the court in January 1993, the court set the matter for hearing in February 1993. As we stated above, the court could have considered Dr. Strano's report when determining James' visitation arrangement without its being formally introduced into evidence.

However, the record does not disclose what specifically occurred at the February 1993 hearing. Both parties do agree (in their briefs and at oral argument) that (1) no evidentiary hearing was held, (2) James requested the opportunity to depose Dr. Strano, (3) the trial court did not permit either party to cross-examine Dr. Strano, and (4) James did not waive his right to cross-examination. After the hearing, the court made its February 1993 docket entry and order as set forth above.

Section 605(c) of the Act afforded James the right to cross-examine Dr. Strano, and James did not waive this right. Therefore, the trial court abused its discretion by denying James the opportunity to cross-examine Dr. Strano regarding his report and recommendations. Accordingly, this case must be remanded to the trial court to allow James this opportunity.

### B. *Standard for Reviewing Visitation Order*

James also argues that the trial court did not apply the proper standard in deciding to modify its order regarding his visitation rights. James contends that the court's first finding in its February

1993 docket entry—"[i]t is not in the best interest of the minor children"—demonstrates that the court ignored the second part of section 607(c) of the Act, which states that visitation rights cannot be restricted unless those rights would seriously endanger the child's physical, mental, moral, or emotional health. Debi responds that the court did not apply the wrong standard or, alternatively, that ample evidence existed to support the court's February 1993 visitation order under either a "best interests" or a "serious endangerment" standard.

A trial court must hold a hearing on the issue of restricted visitation and should grant restricted visitation only after making the extraordinary finding that visitation would seriously endanger the child's physical, mental, moral, or emotional health. (*In re Marriage of Lombaer* (1990), 200 Ill. App. 3d 712, 724, 558 N.E.2d 388, 432.) The serious endangerment standard contained in section 607(c) of the Act is "onerous, stringent, and rigorous" to meet because liberal visitation is the rule and restricted visitation is the exception. (*In re Marriage of Diehl* (1991), 221 Ill. App. 3d 410, 429, 582 N.E.2d 281, 294.) The custodial parent carries the burden of proving by a preponderance of the evidence that visitation with the noncustodial parent would seriously endanger the child. (*Diehl*, 221 Ill. App. 3d at 429, 582 N.E.2d at 294.) Use of a best interests standard, rather than the serious endangerment standard, constitutes reversible error. *Diehl*, 221 Ill. App. 3d at 429-30, 582 N.E.2d at 294.

In this case, the trial court's docket entry does not explicitly reveal whether it used a best interest standard or the serious endangerment standard. However, the court did not make a specific finding that James' visitation with the children would seriously endanger the physical, mental, moral, or emotional health of any of the children. Furthermore, the court stated in its February 1993 order that visitation would not be "in the best interest of the children." In *Diehl*, a similar written finding by the trial court was held equivalent to its use of the best interest standard, not the serious endangerment standard, and thus constituted reversible error. *Diehl*, 221 Ill. App. 3d at 429-30, 582 N.E.2d at 294.

We find that in this case, as in *Diehl*, the trial court used the incorrect standard when reviewing James' visitation rights. Nothing in the February 1993 order demonstrates that the trial court used the serious endangerment standard; instead, the court appears to have relied on the best interests standard. Thus, we remand this case to the trial court so that it can use the proper standard when determining James' visitation rights.

The parties also argue whether the evidence sufficiently supports the February 1993 visitation order. However, because we are remanding this case to allow James the opportunity to cross-examine Dr. Strano on his report and recommendations, and to allow the trial court to use the proper "serious endangerment" standard when determining James' visitation rights, we express no opinion as to the sufficiency of the evidence. We wish to provide the trial court its full latitude in exercising its discretion in determining James' visitation rights. In order to minimize delay in reaching a final resolution of this matter, which will greatly affect the lives of the parties and their children, we also direct that on remand, the trial court conduct a full evidentiary hearing to bring this matter up to date, allowing the parties to present more current evidence that they may have.

### III. Conclusion

For the reasons stated, we reverse the trial court's February 1993 visitation order and remand for proceedings in accordance with the views expressed herein.

Reversed and remanded.

LUND and GREEN, JJ., concur.