NOTICE

Decision filed 03/20/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241260

NO. 5-24-1260

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| ABIGAIL WILLIAMS, | ) | Crawford County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 23-DC-21 |
| | ) | |
| JEREMY WILLIAMS, | ) | Honorable |
| | ) | Matthew J. Hartrich, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court, with opinion.
Presiding Justice Cates and Justice Vaughan concurred in the judgment and opinion.

**OPINION**

¶ 1 Respondent, Jeremy Williams, appeals the September 12, 2024, order of the circuit court of Crawford County that imposed additional terms and conditions upon his parenting time. On appeal, Jeremy argues that the circuit court erred by imposing "additional terms and conditions consistent with the previous allocation of parenting time" pursuant to section 607.5 of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/607.5 (West 2022)). For the following reasons, we reverse and remand.

¶ 2         I. BACKGROUND

¶ 3 We limit our recitation to those facts relevant to our disposition of this appeal. We will recite additional facts in the analysis section as needed to address the specific arguments of the

1

parties. Because the parties share a last name, we will refer to them by their first names throughout this decision.

¶ 4    Abigail (Abby) and Jeremy married on August 1, 2013, in Panama City, Florida. Two children were born to the parties: one in 2014 and another in 2018. Abby and Jeremy were both raised in farming families in Crawford County, Illinois, and have been around farming practices for most of their lives.

¶ 5    The parties separated on or about January 2, 2023. Until that time, the children resided with the parties, and the parties shared in the care-taking functions for the minor children. On January 13, 2023, Abby filed a petition for dissolution of marriage.

¶ 6    On May 7, 2024, the parties entered into an agreed parenting plan allocating parental responsibilities, significant decision-making, and parenting time. On May 15, 2024, the parties entered into a marital settlement agreement. The agreed parenting plan and the marital settlement agreement were adopted and incorporated into a judgment of dissolution of marriage, entered May 17, 2024.

¶ 7    Relevant to this appeal, the agreed parenting plan stated that, with regard to parenting time, Abby shall have parenting time at all times not specifically allocated to Jeremy. Jeremy shall have parenting time every other weekend from Friday after school to Monday when school commences, and every Wednesday from after school until Thursday when school commences. Jeremy was also given parenting time on the Tuesdays following Abby's weekends. During summer break, the parties agreed to parenting time on a "5-2-2-5" basis. Abby was given parenting time every Monday from 8 a.m. to Wednesday at 8 a.m. Jeremy was given parenting time every Wednesday from 8 a.m. to Friday at 8 a.m. with the parties alternating weekends.

¶ 8    Section 5(c) of the parenting plan specified:

"The parties acknowledge and agree that during planting and harvest seasons, Father will be working additional and extended hours. During those periods, Mother shall provide care for the children while Father is working. If Father works past 8:00 PM on a school night, the children will stay at Mother's residence for the night rather than change residences at such a late hour. The overnights described herein shall not apply if there is no school the next day."

¶ 9 Section 5(g) of the parenting plan granted the parties the right to first refusal for childcare. Section 5(g) stated:

"In the event that a parent is unable to be with the child(ren) for a period of eight (8) hours or more, the other parent shall have the first option to provide care for the child(ren) during the period of unavailability. The parties shall promptly advise each other of the need for childcare as early in advance as possible and shall respond to each request as promptly as possible. The parties further agree that if a parent is unavailable/working past 8:00 PM and the other parent is providing care, the child(ren) shall remain with the care-providing parent until the morning to avoid changing residences at a late hour."

¶ 10 On July 10, 2024, Abby filed a petition to enforce parenting time and finding of contempt. In her petition, Abby alleged that Jeremy abused his parenting time, because he failed to allow her to provide care for the children while he worked during the 2024 planting season. Abby alleged that Jeremy violated the agreed parenting plan by working at the farm during his parenting time on 14 days from May 13, 2024, to June 19, 2024. Abby argued that due to the busy nature of the planting and harvest season, Jeremy could not provide for the day-to-day care of the children during his parenting time. Abby asked the court to find that Jeremy failed to comply with section 5(c) and (g) of the agreed parenting plan. She also requested that the court find him in indirect civil

3

contempt.

¶ 11    On July 30, 2024, the circuit court held a hearing on Abby's petition to enforce parenting time. The parties clarified their respective interpretations of the agreed parenting plan. Abby's position was that pursuant to section 5(c), during planting and harvesting season, if Jeremy was working, the children were to be with Abby. Jeremy's position was that section 5(c) was not triggered until Jeremy worked "additional and extended hours." At the hearing, Jeremy testified that his farming operation, Williams Brothers, LLC, farmed approximately 1,625 acres of corn, soybeans, wheat, milo, double-crop beans, and hay. He testified that the farming operation employed five employees: Jeremy, his father, his uncle, his mother, and his aunt. Jeremy, his father, and his uncle conducted the actual farming operation. Jeremy testified that ideally, they begin planting the second week of April, but in 2024, they did not start planting until April 22. He stated that in 2024, they finished planting on June 18.

¶ 12    Jeremy testified that throughout the year, the start and end of his workday varied. He stated that he and his lawyer decided a typical workday ended at 5 p.m. and anything after that was "additional and extended hours." Jeremy stated that the "harvest and planting" language in section 5(c) of the agreed parenting plan "came about because of who was going to pick the children up from school if I was busy planting or harvesting." He opined that "the weekends are for me and the children, and that we're just addressing the additional and extended hours during the week."

¶ 13    Jeremy further testified that since the execution of the agreed parenting plan, the children had not been under the care and supervision of any third persons for more than eight hours during his parenting time. Jeremy testified that he modified his farming schedule since the entry of the agreed parenting plan so that he could be available to exercise his parenting time with the children. Jeremy testified that before the parties separated, the children spent a lot of time on the farm; they

4

rode in tractors, worked in the shop, and spent time with extended family. Jeremy admitted that, occasionally, both children rode with him in the farming equipment at the same time.

¶ 14    Abby's brother, William Schaffer, testified on her behalf. Schaffer testified that his parents were full-time farmers. Schaffer testified that he also farmed in addition to his dentistry practice. He opined that the presence of children at a farm is acceptable in "short stints," but "it's not a place for children to hang out for, you know, extended periods of time or all day." He stated, "there's certain applications where children should not be present, like, with dangerous chemicals or, you know, long hours, darkness, you know. There's all sorts, you know, inherent risks with those different types of things that it's not suitable to have children around."

¶ 15    Abby testified on her own behalf. She testified that she is a school nurse at Robinson High School and works as a nurse for Brookstone Estates on Wednesday nights when the children are with Jeremy. Abby testified that when the parties were married, during planting and harvest season, Jeremy typically left the house before the rest of the family woke up in the morning, and he came home after the family went to bed at night. She stated that during the winter, Jeremy hauled grain and still left early. She stated, "[t]he only chance the kids had to see him was when I took them to the tractor for a couple of hours, and at that time they were only allowed to go one at a time." Abby further testified that when the parties were married, only one child rode with Jeremy in the farming equipment at a time, because "he couldn't handle both of them at the tractor—in the tractor as the same time and there wasn't enough room."

¶ 16    Abby testified that she believed section 5(c) of the agreed parenting plan applied when Jeremy was in the field working during planting and harvest season. Abby stated, pursuant to section 5(c), that if Jeremy was not working during planting and harvesting season because of rain or other reason, he could have the children during his regularly scheduled parenting time.

5

¶ 17    On September 12, 2024, the circuit court entered its order on the petition to enforce parenting time and finding of contempt. In its order, the court stated, *inter alia*:

"3. The Court finds pursuant to 750 ILCS 5/607.5(c) that by a preponderance of the evidence that Father has not complied with the terms of the parenting plan as alleged by Mother.

4. While Paragraph 5.c of the parenting plan is not completely clear in its reading, the Court believes that Mother's interpretation of the disputed provision is somewhat overbroad but closer to being the accurate interpretation of the disputed provision. Father has been having both children ride with him while he plants for extended periods of time in heavy machinery that has only one additional seat for two children. The Court believes this is a safety concern and a reason why this paragraph was placed in the agreement at Mother's request. Mother's interpretation that this provision applies during planting and harvesting seasons if Father is performing any farming work is overbroad.

\* \* \*

A. Pursuant to 750 ILCS 5/607.5(c), the Court orders Father to attend a parental education program at his expense[.] (Mother has already attended a program.) Furthermore, the Court imposes additional terms and conditions with the previous allocation of parenting time and orders that during the planting and harvesting seasons, when Father is operating heavy machinery, such as a tractor, combine, harvester, plow, seeder, planter, semi-truck, loader, front loader, sprayers, or other large farming implements, the children shall be in the care of Mother. If Father is not planting or harvesting because of weather conditions during his allocated parenting time, the children shall be in his care. During these seasons, if he is doing routine work that does not involve the use of heavy machinery during his

6

allocated parenting time, then the children will remain in his care."

The court found that Jeremy's actions were not willful and declined to hold him in contempt.

¶ 18     On September 13, 2024, Jeremy filed a motion to reconsider. In his motion, Jeremy argued that the circuit court erred by imposing additional terms and conditions relating to the children's presence when operating farm equipment. Jeremy argued that the disagreement in interpretation of section 5(c) of the agreed parenting plan involved issues of time, *i.e.*, "additional and extended hours" and that the additional terms and conditions imposed by the court were not "consistent with the previous allocation of parenting time" pursuant to section 607.5(c) of the Dissolution Act. Jeremy also filed a motion for clarification requesting the court to clarify the manner in which he failed to comply with the terms of the agreed parenting plan.

¶ 19     On October 31, 2024, the circuit court denied Jeremy's motion to reconsider and motion to clarify. The order stated:

> "Paragraph 5.c of the Agreed Parenting Plan was drafted by the parties. The Court did not write the paragraph, but it was entered as an order of the Court by the agreement of the parties. After the parties interpreted the paragraph differently, the Court had to determine the meaning of this paragraph. The Court's order entered on 9/12/24 was entered with substantial deliberation and review of the facts and circumstances surrounding the meaning of Paragraph 5.c of the Agreed Parenting Plan. The order put in place specific terms and conditions to make it clear when Paragraph 5.c was operative and the children would be in their mother's care during what would normally be their father's parenting time. If the Court had written the parenting plan, it is likely that many of the provisions of the parenting plan would be different than the parenting plan agreed to by the parties. To grant a motion to reconsider, the Court must find that newly discovered evidence exists

7

that was unavailable at the time of the original hearing, changes have occurred in the law since the original hearing, or errors in the application of the law in the prior order. The Court is unable to find that any of these circumstances apply. As a result, the motion to reconsider is denied. Furthermore, the Court believes that the order entered 9/12/24 is sufficiently clear and that no further clarification is needed. As a result, the motion for clarification is denied."

¶ 20    On November 25, 2024, Jeremy filed his timely notice of appeal.

¶ 21                                    II. ANALYSIS

¶ 22    On appeal, Jeremy argues that the circuit court erred by imposing "additional terms and conditions consistent with the previous allocation of parenting time" pursuant to section 607.5 of the Dissolution Act (750 ILCS 5/607.5 (West 2022)). Specifically, Jeremy argues that the circuit court erred for the following reasons: (1) the Illinois legislature did not intend for section 607.5(c)(1) of the Dissolution Act (*id.* § 607.5(c)(1)) to be a medium for imposing restrictions or modifications of parental decision-making or parenting time, (2) by imposing a one-sided restriction upon his parental responsibilities without a finding of serious endangerment or significant impairment of the children's emotional development, and (3) by imposing additional terms and conditions pursuant to section 607.5(c)(1) of the Dissolution Act that are inconsistent with the previous allocation of parenting time. Essentially, Jeremy's complaints come down to a single issue: whether the circuit court erred by imposing additional terms and conditions under section 607.5 of the Dissolution Act. For the reasons that follow, we agree with Jeremy and reverse and remand for further proceedings.

¶ 23    The legislature enacted section 607.5 of the Dissolution Act, setting forth expedited procedures for the enforcement of allocated parenting time. See 750 ILCS 5/607.5 (West 2022).

8

"A parent may commence such an action by the filing of a petition that includes the terms of the parenting plan or allocation judgment then in effect and the nature of the alleged violation." *In re A.M.*, 2020 IL App (4th) 190645, ¶ 20. A party's noncompliance with an approved parenting plan or a court order must be shown by a preponderance of the evidence. 750 ILCS 5/607.5(c) (West 2022). When a finding of noncompliance is made, the court, acting in the child's best interest, may provide for various types of relief within its order, including (1) an imposition of additional terms and conditions consistent with the court's previous allocation of parenting time or other order, (2) a requirement that either or both of the parties attend a parental education program, (3) a requirement that the parties participate in family or individual counseling, (4) a requirement that the noncomplying parent post a cash bond or other security to ensure future compliance, (5) a requirement that makeup parenting time be provided for the aggrieved parent, (6) a finding that the noncomplying parent is in contempt of court, (7) an imposition on the noncomplying parent of an appropriate civil fine, (8) a requirement that the noncomplying parent reimburse the other parent for all reasonable expenses incurred as a result of the violation, and (9) any other provision that may promote the child's best interests. *Id.*

¶ 24    Section 610.5 (*id.* § 610.5) of the Dissolution Act sets forth requirements for the modification of orders allocating parental decision-making responsibilities and parenting time. Section 610.5(c) specifically provides:

> "Except in a case concerning the modification of any restriction of parental responsibilities under Section 603.10, the court shall modify a parenting plan or allocation judgment when necessary to serve the child's best interests if the court finds, by a preponderance of the evidence, that on the basis of facts that have arisen since the entry of the existing parenting plan or allocation judgment or were not anticipated therein, a substantial change has

occurred in the circumstances of the child or of either parent and that a modification is necessary to serve the child's best interests." *Id.* § 610.5(c).

¶ 25 When modifying parental responsibilities, a circuit court must first determine whether the movant has established, by a preponderance of the evidence, a substantial change in circumstances based on facts that have arisen since the entry of the existing parenting plan or allocation judgment or facts that were not anticipated when the existing parenting or allocation judgment was entered. See *id.*; *In re Marriage of Burns*, 2019 IL App (2d) 180715, ¶ 26. If the movant has not met his or her burden of showing a substantial change in circumstances, then the court must deny the modification petition. See 750 ILCS 5/610.5(c) (West 2022). If the movant meets his or her burden of showing a substantial change in circumstances, the court addresses whether modification is necessary to serve the child's best interests. See *id.*; *Burns*, 2019 IL App (2d) 180715, ¶ 26.

¶ 26 Section 603.10(a) of the Dissolution Act (750 ILCS 5/603.10(a) (West 2022)) provides for the restriction of parental responsibilities, decision making, and/or parenting time, due to a parent's conduct. See Pub. Act 99-90, § 5-15 (eff. Jan. 1, 2016) (adding 750 ILCS 5/603.10). Section 603.10(a) provides:

"After a hearing, if the court finds by a preponderance of the evidence that a parent engaged in any conduct that seriously endangered the child's mental, moral, or physical health or that significantly impaired the child's emotional development, the court shall enter orders as necessary to protect the child." 750 ILCS 5/603.10(a) (West 2022).

¶ 27 "The serious-endangerment standard has been described as an 'onerous, stringent, and rigorous' burden to meet." *In re Marriage of Mayes*, 2018 IL App (4th) 180149, ¶ 56 (quoting *In re Marriage of Diehl*, 221 Ill. App. 3d 410, 429 (1991)). "This is because 'liberal visitation [(parenting time)] is the rule and restricted visitation [(parenting time)] is the exception.' " *Id.*

(quoting *Heldebrandt v. Heldebrandt*, 251 Ill. App. 3d 950, 957 (1993)). The party seeking to restrict parenting time has the burden of proving the alleged conduct seriously endangered the child. *Id.*

¶ 28    Circuit courts are vested with wide discretion in resolving parenting time issues. *Id.* ¶ 57. "[A] court's decisions on visitation or parenting time issues will not be overturned on appeal unless the court abused its discretion or a manifest injustice has been done to the child or parent." *Id.* (citing *In re Marriage of Betsy M.*, 2015 IL App (1st) 151358, ¶ 59). The Illinois Appellate Court has also stated "a court's decisions on visitation or parenting time issues will not be overturned on appeal unless they are against the manifest weight of the evidence or constitute an abuse of discretion." *Id.* (citing *Heldebrandt*, 251 Ill. App. 3d at 954, and *Stockton v. Oldenburg*, 305 Ill. App. 3d 897, 906 (1999)).

¶ 29    Under section 603.10(a) of the Dissolution Act, restricting parental responsibilities is a two-step process. The circuit court must first make a factual determination and find by a preponderance of the evidence that the parent has "engaged in any conduct that seriously endangered the child's mental, moral, or physical health or that significantly impaired the child's emotional development." 750 ILCS 5/603.10(a) (West 2022). If the evidence presented is sufficient to make such a determination, the court must then enter orders necessary to protect the child. *Id.*; *In re Marriage of Mayes*, 2018 IL App (4th) 180149, ¶ 58.

¶ 30    In the case at hand, Jeremy argues that the circuit court erred by applying additional restrictions and modifications under section 607.5(c) of the Dissolution Act. Specifically, Jeremy argues that the court's September 12, 2024, order improperly modified section 5(c) of the parties' agreed parenting plan and imposed additional restrictions. The court's September 12, 2024, order stated:

11

"Pursuant to 750 ILCS 5/607.5(c), the Court orders Father to attend a parental education program at his expense[.] (Mother has already attended a program.) Furthermore, the Court imposes additional terms and conditions with the previous allocation of parenting time and orders that during the planting and harvesting seasons, when Father is operating heavy machinery, such as a tractor, combine, harvester, plow, seeder, planter, semi-truck, loader, front loader, sprayers, or other large farming implements, the children shall be in the care of Mother. If Father is not planting or harvesting because of weather conditions during his allocated parenting time, the children shall be in his care. During these seasons, if he is doing routine work that does not involve the use of heavy machinery during his allocated parenting time, then the children will remain in his care."

¶ 31 At the outset, we note that Abby's petition to enforce parenting time only sought enforcement of the agreed parenting plan pursuant to section 607.5 of the Dissolution Act. It did not request restrictions on Jeremy's parental responsibilities or parenting time pursuant to section 603.10 of the Dissolution Act, which requires a finding by the preponderance of the evidence that a parent engaged in conduct that seriously endangered the child's mental, moral, or physical health or that significantly impaired the child's emotional development. See 750 ILCS 5/603.10(a) (West 2022). Further, Abby's petition did not seek modification of the parenting plan pursuant to section 610.5 of the Dissolution Act, which requires a finding of a substantial change in circumstances and a best interest of the children analysis. See *id.* § 610.5. Instead, the circuit court imposed "additional terms and conditions consistent with the previous allocation of parenting time" pursuant to section 607.5(c)(1) of the Dissolution Act. As noted above, section 607.5(c)(1) permits such relief as a sanction for noncompliance with an approved parenting plan, provided it is consistent with the previous order and serves the child's best interests. See *In re A.M.*, 2020 IL

12

App (4th) 190645, ¶ 20.

¶ 32    In the case before us, the circuit court abused its discretion by imposing the "additional terms and conditions" pursuant to section 607.5 of the Dissolution Act. The additional terms and conditions prohibited Jeremy from exercising his parenting time while operating farm equipment during planting and harvesting seasons. The use of such equipment is essential to the operation of a working farm. These additional restrictions exceed mere clarification or enforcement of the agreed parenting plan. The original agreed-upon parenting plan did not restrict Jeremy from operating farming equipment in the presence of the children but merely addressed the length of time Jeremy worked during his parenting time.

¶ 33    Section 5(c) of the agreed parenting plan addressed Jeremy's "additional and extended hours" during planting and harvesting seasons and granted Abby the right to provide care when Jeremy worked additional and extended hours on school nights or was otherwise unavailable for extended periods of time. The parties disagreed in their interpretations of section 5(c) of the agreed parenting plan. Abby's position was that, pursuant to section 5(c), during planting and harvesting season, if Jeremy was working, the children were to be with Abby. Jeremy's position was that section 5(c) was not triggered until Jeremy worked "additional and extended hours." The agreed parenting plan did not prohibit the children's presence on the farm or around the farm equipment.

¶ 34    Upon ruling on Abby's motion, the court's September 12, 2024, order introduced a broad safety-based prohibition on the children's involvement in the farming activities. The court's order effectively restricted Jeremy's parenting time during his allocated periods. Specifically, the order prohibited Jeremy from operating farm equipment during planting and harvesting season, during his parenting time. This was tantamount to a restriction under section 603.10, as it limited Jeremy's ability to exercise his parental responsibilities (*e.g.*, how the children spend time with him on the

13

farm) without the requisite finding of serious endangerment. See *Mayes*, 2018 IL App (4th) 180149, ¶ 56 (the serious-endangerment standard has been described as an "onerous, stringent, and rigorous" burden to meet (internal quotation marks omitted)). In order to impose a restriction under section 603.10, the court must find that the parent "engaged in any conduct that seriously endangered the child's mental, moral, or physical health or that significantly impaired the child's emotional development." 750 ILCS 5/603.10(a) (West 2022). The court did not make such a finding in this case.

¶ 35    Moreover, the circuit court's September 12, 2024, order was not a proper modification under section 610.5 of the Dissolution Act. Section 610.5 requires a finding, by a preponderance of the evidence, that a substantial change occurred in the circumstances of the child or of either parent, and a modification is necessary to serve the child's best interests. *Id.* § 610.5(c). Here, the circuit court made no such findings. Abby's petition alleged noncompliance with the existing parenting plan and did not allege a substantial change warranting modification. The court's order, while specifically entered pursuant to section 607.5(c), ultimately modified the parenting plan by adding new prohibitions not contemplated in the original agreement. The court's order did not find a substantial change in circumstances, and the court did not conduct a best interest finding. The court's order circumvented the procedural safeguards of section 610.5.

¶ 36    In response to Jeremy's claims, Abby contends that the circuit court's September 12, 2024, order merely clarified ambiguity in section 5(c) of the agreed parenting plan. She argues that the order did not restrict Jeremy's decision making or time. While we agree that section 5(c) contained some ambiguity regarding the trigger for Abby's caregiving rights (*e.g.*, "additional and extended hours"), the circuit court's remedy introduced entirely new content. For example, a machinery-specific prohibition not present in the original parenting plan. The evidence presented at the

14

hearing on the petition to enforce parenting time, including testimony from Abby's brother regarding the inherent risks associated with farms, fell short of establishing serious endangerment by a preponderance of the evidence. Further, as noted above, Abby's petition to enforce parenting time did not allege serious endangerment. The additional terms and conditions imposed by the court's September 12, 2024, order are also inconsistent with the prior allocation, as they shifted parenting time to Abby during periods when Jeremy operated farming equipment, regardless of hours worked or the children's historical involvement on the farm.

¶ 37    Although section 607.5(c)(1) of the Dissolution Act allows for additional terms and conditions to enforce compliance of a parenting plan or court order, in the case before us, the circuit court abused its discretion by imposing terms that amounted to a restriction and modification of Jeremy's parenting time without adhering to sections 603.10 or 610.5. Accordingly, we reverse the portion of the September 12, 2024, order imposing the additional terms and conditions. The cause is remanded for further proceedings consistent with this opinion.

¶ 38                                  III. CONCLUSION

¶ 39    For the reasons stated herein, we reverse the Crawford County circuit court's September 12, 2024, order imposing additional terms and conditions inconsistent with the parties' agreed parenting plan and remand for proceedings consistent with this opinion.

¶ 40    Reversed and remanded.

15

*In re Marriage of Williams*, 2026 IL App (5th) 241260

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Crawford County, No. 23-DC-21, the Hon. Matthew J. Hartrich, Judge, presiding. |
| **Attorneys for Appellant:** | David A. McDevitt and Thomas A. Beley, of McDevitt, Osteen, Chojnicki & Deters, LLC, of Effingham, for appellant. |
| **Attorneys for Appellee:** | Esther J. Cha, of Cha Law Ltd., of Robinson, for appellee. |