**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250057-U

Order filed June 17, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| MADHAVI ELLORA RYALI, | ) | Du Page County, Illinois, |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-25-0057 |
| and | ) | Circuit No. 17-D-1074 |
| | ) | |
| SUNIT SINGLA, | ) | |
| | ) | Honorable |
| Respondent-Appellant. | ) | James F. McCluskey, |
| | ) | Judge, presiding. |

_____

PRESIDING JUSTICE HETTEL delivered the judgment of the court.
Justices Anderson and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  (1) The trial court's modification of parental responsibilities and parenting time was not against the manifest weight of the evidence. (2) The trial court did not err in restricting Sunit's parenting time. (3) The trial court's denial of the Petition for Rule to Show Cause relating to Sunit's parenting time was not an abuse of discretion. (4) The trial court's rulings regarding the admission of recordings were not an abuse of discretion.

¶ 2    The petitioner, Madhavi Ellora Ryali, filed a Petition to Modify Parenting Agreement and Allocation Judgment and a Petition for Rule to Show Cause. In the Petition for Rule to Show

Cause, she alleged that the respondent, Sunit Singla, failed to abide by the terms of the Allocation Judgment. Sunit filed a Motion for Make-Up Parenting Time, Attorney's Fees and Costs, and Other Relief, and a Petition for Rule to Show Cause, alleging that Madhavi failed to provide him with parenting time. Madhavi then filed a Petition to Modify Allocation Judgment and Other Relief, requesting that she be allowed to enroll the minor child, L.S., in a private school. The trial court granted Madhavi's Petition to Modify Parenting Agreement and Allocation Judgment, ordering that Madhavi have all decision-making and parenting time and that Sunit have no parenting time. The trial court also granted Madhavi's Petition to Modify Allocation Judgment and Other Relief and allowed Madhavi to enroll L.S. in private school. The trial court denied Sunit's Petition for Rule to Show Cause. On appeal, Sunit argues that the trial court erred in granting Madhavi sole decision-making authority for the children; ordering no parenting time for Sunit; allowing Madhavi to enroll L.S. in private school; and denying Sunit's request to find Madhavi in indirect civil contempt for failing to provide him with parenting time. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Madhavi and Sunit are parents of two minor children: namely, R.S. and L.S. The allocation of parental responsibilities and parenting time for the children was reduced to writing in a detailed Parenting Agreement and Allocation Judgment entered on March 13, 2018. The parties' marriage was dissolved pursuant to an agreed Judgment of Dissolution of Marriage entered on March 19, 2018. The Allocation Judgment granted Madhavi final decision-making authority related to medical and extracurricular activities and designated her address as the children's residential address for school enrollment purposes. The Allocation Judgment also provided that regular parenting time be divided, with Madhavi having four days per week and Sunit having three days

2

per week during the school year. The parties were awarded an equal parenting schedule during the summer months.

¶ 5        On September 22, 2022, Madhavi filed an Emergency Petition for Order of Protection against Sunit, which was granted. The Emergency Order of Protection named Madhavi and the children as protected parties. The Emergency Order provided that Sunit was to have no parenting time with the children; listed Madhavi's residence, employer, and the children's school as protected locations; prevented Sunit from contacting Madhavi or the children; and awarded physical possession of the children to Madhavi.

¶ 6        On September 6, 2022, Madhavi filed a Petition to Modify Parenting Agreement and Parenting Plan. Madhavi requested an order requiring Sunit to attend parenting counseling; granting her sole decision-making authority for the children; and designating her as the sole residential parent. Madhavi also filed a Petition for Rule to Show Cause, requesting that Sunit be held in indirect civil contempt for his alleged violations of the Allocation Judgment relating to the administration of medication to the children, cancelling the babysitter during his parenting time, disparaging Madhavi to the children, making long calls to the children on school nights, and refusing to allow Madhavi telephone access to the children during his periods of parenting time.

¶ 7        On September 22, 2022, the trial court entered an order appointing Dr. Mark Goldstein to conduct an investigation and evaluation pursuant to 750 ILCS 5/604.10(b) in the order of protection case. The trial court specifically instructed that the investigation provide information and recommendations to assist the court in determining the necessity for restrictions of Sunit's parenting time.

3

¶ 8    On January 4, 2023, Dr. Goldstein issued an interim report, recommending that Sunit begin parenting time with the children, but that it be limited to one lunch or dinner for up to two hours per week, to take place at a public restaurant, without Madhavi's presence.

¶ 9    The Emergency Order of Protection was extended various times during the pendency of the proceedings. On February 6, 2023, it was extended again, but was modified to allow parenting time for Sunit and contact between the parties for parenting time exchanges. Sunit's parenting time was limited to one lunch or dinner for up to two hours per week, to take place at a public restaurant, with exchanges to occur at the DuPage Family Center. A Guardian *ad Litem* (GAL)was also appointed on that date.

¶ 10   On February 20, 2023, Dr. Goldstein issued his complete child custody evaluation report. Dr. Goldstein recommended a step-up schedule for Sunit's parenting time, ultimately leading to one dinner per week and alternate weekends from Friday after school until Monday morning; an alternating holiday schedule; vacation parenting time; joint decision-making authority for the children's medical care; continuing enrollment of the children in their current schools; permitting the children to choose their own activities; and daily contact between the children and the other parent. The recommendation also included that Sunit enroll in individual therapy with a focus on anger management, and that his parenting time be contingent on his participation in individual therapy. Finally, Dr. Goldstein recommended continuation of the children's current therapy and reunification therapy for Sunit and the children.

¶ 11   On April 17, 2023, Madhavi voluntarily dismissed the Petition for Order of Protection, and the GAL provided the trial court with her initial report. Based on that report, the parties agreed to follow the GAL's recommendations, which included increasing Sunit's parenting time to four hours per week in a public place.

4

¶ 12         On May 16, 2023, Sunit filed a Motion for Makeup Parenting Time, Attorneys' Fees and Costs, and Other Relief, requesting an immediate return to the schedule set forth in the Allocation Judgment. He also requested make-up parenting time from the date the Order of Protection was entered and fees and costs associated with Dr. Goldstein and the GAL.

¶ 13         On June 12, 2023, Sunit's parenting time was increased to every other weekend for four hours on Saturday and four hours on Sunday and alternating weekday dinner for up to three hours. Sunit was also granted daily phone contact with the children. Additionally, a reunification therapist was appointed for Sunit and the children.

¶ 14         The GAL issued an updated recommendation on July 28, 2023. Among her recommendations was slow, incremental increases in Sunit's parenting time. She opined this schedule was in the best interests of the children. The GAL issued another updated written recommendation on October 2, 2023, again recommending slow, incremental increases in Sunit's parenting time. In accordance with these recommendations, Sunit's parenting time was increased and he was ordered to enroll and participate in cognitive behavioral therapy. The GAL subsequently gave an oral report to the trial court, recommending that Sunit's parenting time be limited per the prior order increasing his time to four hours per week.

¶ 15         On February 5, 2024, Madhavi filed an Emergency Petition to Modify Parenting Time and Other Relief, seeking to reduce Sunit's parenting time. The trial court did not grant the Emergency Petition, but set it for hearing. On February 15, 2024, Madhavi filed an Amended Petition to Modify Parenting Agreement and Allocation Judgment.

¶ 16         The matter proceeded to trial on the pending petitions on March 15, 2024, and continued for four additional days thereafter. We recount the trial testimony necessary to address the issues raised on appeal.

¶ 17    The GAL testified regarding her investigation and her three written reports. The GAL testified consistently with her reports and provided the trial court with her recommendations. She interviewed the parties, the children, the children's therapists, a social worker, and the court-ordered reunification therapist. She also reviewed Dr. Goldstein's child custody evaluation report. The GAL provided several examples of Sunit's anger toward the children, including swearing at R.S. when R.S. declined to attend her grandfather's funeral; punching a wall, breaking a light switch/plate, and turning over a hamper full of clothes in front of the children; and screaming and using profanity, causing the minor L.S. to urinate on herself. She testified that R.S. threatened to run away and self-harm, and that the children were afraid of Sunit. She opined that Sunit's emotional outbursts of anger during his communication with the children affected their emotional well-being. In her report, she referenced her interviews with the children's respective therapists. R.S.'s therapist reported that R.S. had anxiety due to the trauma she was experiencing, which included memories of physical abuse she witnessed between her parents. The therapist further advised that as soon as Sunit's parenting time increased, she saw an increase in R.S.'s anxiety. The therapist also reported to the GAL that R.S. is afraid of Sunit and has gone into "survival mode." L.S.'s therapist similarly opined that L.S. is very afraid of Sunit, reporting that L.S. said Sunit frequently yelled at her and she felt she "could not do anything right." L.S.'s therapist also advised the GAL of her concerns about the "toll this is taking on [L.S.] and that L.S. was not sleeping well, sometimes falling asleep in class. The therapist believed that Sunit engaged in conduct that seriously endangered L.S.'s mental health and impaired her emotional development, and recommended temporarily suspending Sunit's parenting time until Sunit "gets help."

¶ 18    The GAL recommended that Madhavi have final decision-making authority over the children's educational, medical, and extracurricular activities. She further recommended that

Sunit's parenting time be suspended until the children's therapists deemed it appropriate or the children initiated the resuming of parenting time with Sunit. The GAL also recommended that reunification therapy between Sunit and the children continue, and that both children and parents should continue with therapy. She testified that once Sunit's parenting time resumed, it should be contingent on his continued participation in therapy. Finally, the GAL recommended that Sunit attend a parenting course specifically tailored to adolescent girls, and that the parties continue to communicate through a parenting app.

¶ 19    Sunit also testified at trial. Sunit denied that his daughters were afraid of him and claimed Madhavi was the reason for his problems with the children. He testified that Madhavi used the Order of Protection to restrict his parenting time. The trial court found that he downplayed his bad conduct with the children. The trial court also found that he did not accept any accountability for the situation with the children.

¶ 20    Madhavi testified regarding the ongoing problems between Sunit and the children. She testified that she encouraged the children to visit with Sunit, but she would not force the children to see Sunit. Madhavi also testified that the reunification therapist recommended she not force the children to go for parenting time and specifically advised that Madhavi not force the children into the vehicle for parenting time. Madhavi stated that she never cancelled Sunit's parenting time, and testified regarding the parenting time and recommendations made to her by the GAL, the reunification therapist, and the children's therapists. All of the professionals recommended that she not force the children to go with Sunit.

¶ 21    Madhavi sought to introduce a series of video recordings as evidence. The recordings depicted interactions between the parties from 2015 and 2016, some years prior to the entry of the agreed Allocation Judgment. Sunit objected to the admission of the recordings, arguing they were

7

outdated, lacked foundation, and were taken in violation of the Eavesdropping Act, as they were taken without his knowledge or consent. The trial court considered the arguments of the parties and reviewed the content and context of the recordings. The trial court denied the admission of the recordings, finding them to be irrelevant, and that the remoteness in time outweighed any evidentiary value. According to the trial court's findings, the recordings were made more than eight years before the most recent disputes between the parties; were made prior to the entry of the agreed Allocation Judgment; and did not address the current issues before the trial court.

¶ 22 The trial court issued its written ruling on December 27, 2024. The trial court made specific findings as to the credibility of the witnesses, finding Madhavi to be credible and Sunit to be not credible. The trial court also found the GAL to be credible and found her investigation to be "thorough." The trial court found the GAL's testimony provided the court with "extensive global insight into the family dynamics of the parties as it relates to parenting time." The trial court found that the school social worker, the reunification therapist, and all treating therapists agreed with the GAL's recommendations. Further, the trial court found that a substantial change in circumstances occurred since the entry of the Judgment for Dissolution of Marriage in that Sunit's conduct caused a limitation in his parenting time requiring a modification of the Allocation Judgment. The trial court also found that Sunit having any parenting time with the children seriously endangered their physical, mental, moral, and emotional health and significantly impaired their emotional development. The trial court found it was in the best interests of L.S. that she be enrolled in and attend Vine Academy; that the taping of the conversation between Sunit and R.S. did not violate Sunit's expectation of privacy; and that Madhavi did not violate the Allocation Judgment in that not forcing the children to go with Sunit during his parenting time was reasonable and not willful and contumacious. The trial court ordered Sunit's parenting time suspended indefinitely,

8

continuation of reunification therapy, individual therapy for Sunit, that Sunit enroll and attend a parenting course specifically tailored to adolescent girls, and that the parties continue to communicate through the parenting app. The trial court further ordered that Madhavi shall have final decision-making authority regarding all signification and major decisions involving the children.

¶ 23                                    II. ANALYSIS

¶ 24        On appeal, Sunit argues that (1) the trial court's ruling reducing his parenting time and decision-making authority was in error; (2) the trial court erred in denying his Petition for Rule to Show Cause relating to Madhavi's interference with his parenting time; (3) the trial court erred in allowing Madhavi to enroll the minor child L.S. in the Vine Academy without his consent; (4) the Guardian *ad Litem*'s report improperly referenced recordings that violated the eavesdropping statute, upon which the trial court relied; (5) the trial court erred in ruling the improper recording was not a violation of his expectation of privacy; and (6) the trial court erred when it considered the 2015 and 2016 video tapes in its ruling.

¶ 25                    A.  Allocation of Parenting Time and Decision-Making

¶ 26        Sunit's first argument is that the trial court's ruling that reduced his parenting time and decision-making authority was erroneous. The trial court suspended Sunit's parenting time until further order and modified the allocation of decision-making authority to provide Madhavi with final decision-making authority regarding all significant decisions involving the children. We review whether a trial court's decision regarding custody is contrary to the manifest weight of the evidence. *In re Marriage of Katsap*, 2022 IL App (2d) 210706, ¶ 24 (decision-making); *In re Marriage of Virgin*, 2021 IL App (3d) 190650, ¶ 44 (parenting time).

¶ 27    Section 603.10 of the Illinois Marriage and Dissolution of Marriage Act provides for the restriction of a parent's decision-making responsibilities and parenting time as a result of a parent's conduct. 750 ILCS 5/603.10 (West 2022). Section 603.10(a) reads:

> "After a hearing, if the court finds by a preponderance of the evidence that a parent engaged in any conduct that seriously endangered the child's mental, moral, or physical health or that significantly impaired the child's emotional development, the court shall enter orders as necessary to protect the child." *Id.* § 603.10(a).

Orders necessary to protect a child may include, *inter alia*, a reduction, elimination, or other adjustment of the parent's decision-making responsibilities or parent time, or both decision-making responsibilities and parenting time. *Id*. § 603.10(a)(1).

¶ 28    The serious-endangerment standard is an "onerous, stringent, and rigorous" burden to meet. *In re Marriage of Diehl*, 221 Ill. App. 3d 410, 429 (1991). This is because liberal parenting time is the rule and restricted parenting time is the exception. *Heldebrandt v. Heldebrandt*, 251 Ill. App. 3d 950, 957 (1993). Restricting parenting time or parental responsibilities is a two-step process. First, the trial court must make a factual determination that the evidence demonstrates, by a preponderance of the evidence, that a parent has engaged in any conduct that seriously endangered the child. 750 ILCS 5/603.10(a) (West 2022 If the trial court finds the evidence is sufficient to make such a determination, it must then enter orders necessary to protect the child. *Id.* In doing so, the trial court must exercise its discretion in selecting appropriate restrictions to parenting time or parental responsibilities to provide for the child's safety and welfare. *Id*. § 603.10(a)(1-9).

¶ 29    The evidence adduced at trial was that Sunit responded to heated situations by using profanity and threatening punishment, as well as an inability of Sunit to control his anger. In her

written report, the GAL opined that the children's present environment with Sunit caused significant distress to the children. Each of the children's therapists reported concerns about Sunit's lack of accountability and desire for control, and that his actions would continue to cause serious psychological, emotional, and mental damage to the children. R.S.'s therapist reported that when R.S. felt overwhelmed, she verbalized suicidal thoughts and thoughts of self-harm. R.S. was prescribed a mood stabilizer, the dosage of which was increased in January 2024. The therapist also reported that R.S. had body and somatic issues, such as headaches and trouble sleeping. L.S.'s therapist reported concerns that Sunit's behavior was escalating, causing L.S. to "spiral," and further reported that L.S. was afraid of Sunit. According to the therapist, L.S. felt a lack of control over her own life and the therapist was concerned that Sunit did not seem to care about the impact his behavior had on L.S.

¶ 30    Based on the evidence presented, we find the restrictions to Sunit's parenting time and decision-making was not against the manifest weight of the evidence. While Sunit contended his behavior was not inappropriate or harmful to the children, the trial court concluded otherwise.

¶ 31                                B.  Petition for Rule to Show Cause

¶ 32    Sunit next argues that the trial court erred in denying his Petition for Rule to Show Cause relating to the denial of his court-ordered parenting time by Madhavi. The standard of review for the denial of a petition for rule to show cause is an abuse of discretion. *Eckerty v. Eastern Illinois Foodbank*, 2022 IL App (4th) 210537, ¶ 31-32.

¶ 33    Contempt of court is defined as "conduct calculated to embarrass, hinder, or obstruct a court in its administration of justice or to derogate from its authority or dignity or bring the administration of law into disrepute." *In re Estate of Melody*, 42 Ill. 2d 451, 452 (1969). Generally, civil contempt occurs when a party fails to do something ordered by the trial court, resulting in the

11

loss of a benefit or advantage to the opposing party. *In re Marriage of Charous*, 368 Ill. App. 3d 99, 107 (2006). A contempt of court order is used as a means to control conduct either by punishing an offender who obstructs or embarrasses the court in its administration of justice or by coercing compliance with court orders. *Id*. Contempt is characterized as either direct or indirect. Indirect contempt of court refers to contumacious actions that occur outside of the courtroom. *Id*. The existence of a court order and proof of willful disobedience of that order are essential to any finding of indirect contempt. *In re Marriage of Tatham*, 293 Ill. App. 3d 471, 480 (1997). "The burden initially falls on the petitioner to prove by a preponderance of the evidence that the alleged contemnor has violated a court order." *Charous*, 368 Ill. App. 3d at 107. If a preponderance of the evidence is established, the burden then shifts to the alleged contemnor to show that noncompliance with the trial court's order was not willful or contumacious and that he had a valid excuse for failure to follow the court order. *Id*. at 107-08.

¶ 34        Civil contempt proceedings have two fundamental attributes: (1) the contemnor must be capable of taking the action sought to be coerced and (2) no further contempt sanctions are imposed upon the contemnor's compliance with the pertinent court order. *In re Marriage of Sharp*, 369 Ill. App. 3d 271, 279 (2006). "One of the chief characteristics of civil contempt is that the contemnor must 'hold the keys to the cell,' *i.e.*, he must have it within his power to purge himself by complying with the court's order." *Pancotto v. Mayes*, 304 Ill. App. 3d 108, 111 (1999) (citing *In re Marriage of Betts*, 200 Ill. App. 3d 26, 44 (1990)). Contempt based on past actions which cannot be undone means that the contemnor lacks the ability to purge the contempt because the purpose of civil contempt is to compel compliance with court orders, not to punish. *In re Marriage of O'Malley*, 2016 IL App (1st) 151118, ¶ 26. "Therefore, whenever a court order cannot be complied with, there cannot be a finding of civil contempt." *Id*. Whether a party is guilty of civil

12

contempt is a question for the trial court and its decision will not be disturbed unless it is against the manifest weight of the evidence or the record demonstrates an abuse of discretion. *Charous*, 368 Ill. App. 3d at 108 (citing *In re Marriage of Logston*, 103 Ill. 2d 266, 286-87 (1984)). A trial court abuses its discretion "only where no reasonable person would take the view adopted by it." *In re Marriage of Lyman*, 2015 IL App (1st) 132832, ¶ 89.

¶ 35     In this case, the trial court found that Sunit established a *prima facie* case for indirect civil contempt of court and the burden shifted to Madhavi to demonstrate that her failure to provide Sunit with parenting time was not willful or contumacious, but based upon a valid excuse. See *In re Marriage of Barile*, 385 Ill. App. 3d 752, 758-59 (2008); *Charous*, 368 Ill. App. 3d at 107-08.

¶ 36     We agree with the trial court that Madhavi had a valid excuse for not obeying the Allocation Judgment regarding Sunit's parenting time. Based on the record before us, the evidence supports the trial court's denial of the Petition for Rule to Show Cause. The children's therapists, the reunification counselor, and the GAL each advised Madhavi that she should not force the children to go to parenting time with Sunit. The trial court found that Madhavi had not willfully violated the order regarding parenting time; that her actions were not willful and contumacious; and that not forcing the children to go with Sunit during his parenting time was reasonable under the circumstances. Accordingly, the trial court did not abuse its discretion in denying the Petition for Rule to Show Cause.

¶ 37                              C.  Admission of Recordings

¶ 38     Finally, Sunit argues that certain inadmissible evidence was admitted and considered by the trial court in its ruling.

¶ 39     Sunit argues that the GAL's report improperly referenced improper recordings in violation of the Eavesdropping Act. In support, he argues that evidence obtained in violation of the

13

Eavesdropping Act (720 ILCS 5/4-15 (West 2022) is not admissible in civil and/or criminal proceedings and, as such, the GAL could not have considered the recording because the recording was unlawful and evidence related to the recording was inadmissible under the statute.

¶ 40    Assuming, *arguendo*, that the trial court did rely on the recording, Sunit has failed to show how he was prejudiced by the recording. The court finds *In re Marriage of Karonis*, 693 N.E. 2d 1292, 1286 (1998) to be factually similar to the case before us. *Karonis* involved a custody dispute in which the husband claimed the GAL listened to recordings of telephone conversations between the husband and the children in violation of the eavesdropping statute. In *Karonis*, the court noted that the husband assumed the tapes were recorded in violation of the eavesdropping statute, but found his argument to be irrelevant, as regardless of the violation, neither the tapes nor the contents were used as evidence at trial or relied upon by the trial court. *Id*. The *Karonis* court noted that the statute requires the GAL to protect the best interest of the child, and that reviewing the tapes materially advanced the GAL's ability to determine and defend the child's interests. *Id.* A litigant is not prejudiced where the GAL listens to information that may be inadmissible at trial and that "compelling reasons of public policy dictate that the GAL perform duties essential to the health and welfare of the child whom the GAL represents." *Id.* As similarly so in *Karonis*, the trial court did not rely upon the recordings. Sunit's argument is unpersuasive.

¶ 41    Sunit also argues that the trial court erred in relying on certain recordings that were made in 2015 and 2016 in its ruling, as the trial court did not allow for the admission of those recordings into evidence. We also find this argument to be unpersuasive. At trial, the court sustained Sunit's objection to the admission of the 2015 and 2016 recordings. In its ruling, the trial court did not refer to the 2015 and 2016 recordings. Sunit argues, however, that the trial court's reference to a tape recording of Sunit yelling and swearing in its ruling was error, as that recording references

the 2015 and 2016 recordings, which were found to be inadmissible by the trial court. The trial court specifically found "[t]he taping of the conversation between Sunit and his oldest daughter [R.S.] by speaker phone at the residence of Madhavi, while Madhavi was present did not violate Sunit's expectation of privacy. *Further, the Court did not consider that conversation in rendering its judgment order*." (Emphasis added.) The trial court's reference to the recordings, if erroneous at all, would be harmless error. See *Inman v. Howe Freightways, Inc.*, 2019 IL App (1st) 172459, ¶ 157 (noting that harmless error occurs when, despite the presence of an error, it appears no harm was done, and reversible error occurs when the error appears to have affected the outcome of the trial).

¶ 42    In summary, the professionals in this matter—including the court-appointed custody evaluator, the children's therapists, the GAL, and the reunification counselor—all recommended restrictions on Sunit's parenting time. The trial court found that Madhavi's testimony was credible and that Sunit's testimony was not credible. The trial court also found the GAL to be credible. On appeal, we cannot reweigh the credibility of the witnesses, and based on the appellate record, we cannot say that the trial court's decision was arbitrary or unreasonable. *Karonis*, 296 Ill. App. 3d at 88. Accordingly, we find no claims of error.

¶ 43                                          III. CONCLUSION

¶ 44    The judgment of the circuit court of Du Page County is affirmed.

¶ 45    Affirmed.